## THE COMMON COUNCIL OF THE CITY OF DETROIT v. THE PUBLIC LIGHTING COMMISSION OF DETROIT.

*Municipal corporations—Contract for public lighting—Approval by council—Mandamus.*

*Mandamus* will lie to compel the public lighting commission of Detroit, provided for by Act No. 294, Local Acts of 1893, to submit to the common council, for its approval or disapproval, contracts entered into by the commission under section 4 of the act for the purchase of lands, machinery, and appliances necessary to the establishing of a plant for public lighting.

*Certiorari* to Wayne. (Donovan, J.) Argued June 5, 1894. Decided July 5, 1894.

Relator applied to the circuit court for *mandamus* to

compel the public lighting commission of Detroit to submit to the common council, for its approval or disapproval, certain contracts entered into by the commission for the purchase of appliances incident to the establishing of a public lighting plant.    Relator brings *certiorari* to review order denying the writ.    Reversed, and *mandamus* granted. The facts are stated in the opinion.

*Philip T. Van Zile,* for relator.

*John J. Speed,* city counselor, for respondent.

McGRATH, C. J.   In 1893 the charter of the city of Detroit was amended so as to provide for a public lighting commission.    Act No. 294, Local Acts of 1893.

Section 1 of the amending act provides for the appointment of the commissioners.

Section 2 provides that the city may procure the necessary plant for lighting, or it may purchase towers, poles, wires, lamps, and other appliances, the use of which it may let to persons contracting to light the city, and empowers the city to lay pipes and conduits and maintain wires in the streets, alleys, etc.

Section 3 provides that, if the common council shall determine to contract for lighting, it shall, by resolution, direct the public lighting commissioners to enter into a contract for lighting said city, either by electricity or by such other means as it may determine, and that it shall thereupon be the duty of the commissioners to prepare specifications and advertise for proposals, and enter into a contract on behalf of said city with the lowest responsible bidder.

Section 4 is as follows:

"If the common council shall determine that it is advisable to establish a plant for public lighting, to be owned by the city, it may direct said commissioners to

purchase the necessary lands, machinery, wires, poles, lamps, towers, and other apparatus and appliances mentioned in the first section of this chapter, the cost of which shall not exceed $800,000, and it shall thereupon be the duty of said commissioners to carry into effect the authority thereby conferred, and to make the necessary purchase of lands, machinery, engines, tools, lamps, apparatus, and appliances, and construct the buildings required, and cause to be constructed or laid all necessary conduits and lines of wire below ground, and to erect and construct all necessary poles, towers, posts, lines of wire above ground, which they shall deem necessary or required according to such system or systems as they may deem best for the lighting of said city."

Section 5 provides that the commissioners may employ an electrical engineer, and such other superintendents, engineers, clerks, agents, and subordinates under them as may be necessary to carry into effect the provisions of this chapter, regulate and define their duties, and prescribe their compensation.

Section 6 provides that the commissioners shall have a general supervision and management of all public lighting, and of any plant established by the city, and all employés engaged in or about the construction or operation thereof, provided that, after the adoption by them of plans and specifications for the erection of any buildings, the board of public works shall have the immediate supervision or superintendence of construction thereof, and also of the laying of conduits in the public streets, and of the necessary excavation, refilling, and repaving caused thereby.

Compiler's section 190 of the charter[1] provides that—

"No contract shall be let or entered into for the construction of any public work, or for any work to be done, or for the purchasing or furnishing of supplies for said city not herein provided for, and no such public work, performance, purchasing, or supplying shall be commenced

---

[1] Compilation of 1893.

until approved by the common council, and until the contract therefor has been duly approved and confirmed by the common council." [1]

Relator applies for a *mandamus* to compel respondent to submit to the common council, for its approval or disapproval, certain contracts entered into by the commissioners under section 4 of the act of 1893.

The commissioners insist that, with the direction to purchase, the authority of the common council ceased; that the direction to purchase, without conditions or limitations, is inconsistent with authority to purchase by contract, subject to approval by the council; and that a purchase according to such systems as the commission shall deem best is inconsistent with the approval of another body, which may not agree with the commission.

The act in question is not a separate, independent act. It is an amendment to the charter. Compiler's section 190, above referred to, is found in the chapter relating to "Taxation and Finance;" and this chapter contains, not only this, but other conditions, limitations, and restrictions, which are applicable to all purchases made and contracts entered into by or on behalf of the city, unless the act creating the agency of the city, in express terms or by necessary implication, exempts such agency from the operation of these provisions. A direction to purchase, given to this agency, must be construed just as a direction given to any other agency of the city. The mode of the exercise of the authority conferred must be that provided by the charter, of which the act is amendatory.

It will be noticed that section 3 of the act provides that, in case the council determines to contract for lighting, it *shall*, by resolution, direct the commissioners to enter into a contract for lighting, while section 4 provides that, if

---

[1] Act No. 326, Local Acts of 1883, chap. 11, § 8.

the council shall determine that it is advisable to purchase
a plant, it *may* direct said commissioners to purchase the
necessary lands, etc.   Section 2 authorizes the city to
purchase, and it would seem that the Legislature intended
that the direction to the commission to purchase the
lands, machinery, and appliances at least should be dis-
cretionary with the common council.   Clearly, if the coun-
cil had undertaken to purchase, it would have been bound
by the restrictions contained in chapter 11.   The authority
"to purchase" is none the less specific in the one case
than in the other.   It is made the duty of the commis-
sioners to carry into effect the authority conferred by the
council.   The construction contended for by respondent
necessarily excludes, not only the provision respecting the
confirmation of contracts by the council, but all of the
limitations, conditions, and restrictions imposed by chapter
11, and gives to the commissioners absolute authority to
expend the sum of $800,000 in their own way, and with-
out even a report to anybody as to such expenditure.

It is urged that the act empowers the commission to
determine the system, and that, if the council may refuse
to confirm the contract, it may thus control the system
to be adopted.   We cannot assume that the council will
act capriciously, or seek to interfere with the proper exer-
cise of the discretion reposed in the commission.   It is
not unusual to place limitations upon the exercise of dis-
cretionary powers, or to require the concurrence of other
agencies to effectuate conclusions reached.   The question
here is whether the limitations contained in the body of
the charter apply to this amendment.   Was it intended
that this section 4, which is devoid of detail or method,
should be treated as an independent provision, without
regard to general charter provisions expressly applicable to
all purchases and all contracts?   We think not.

.The judgment must therefore be reversed, and the court below directed to issue a *mandamus* as prayed.

The other Justices concurred.